UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANS EVERS, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 2189 |
| v. ) | |
| ) | Judge John W. Darrah |
| JO ANNE BARNHART, Commissioner of the ) | |
| United States Social Security Administration; ) | |
| JAMES MARTIN; DONNA MUKOGAWA; ) | |
| JERRY KAYSER; LILLIE BROWN; ) | |
| NESTOR FLORESCA; REGGIE POSKOCIMAS; ) | |
| and THE UNITED STATES SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Hans Evers, M.D., filed suit against Defendants, alleging denial of procedural due process, denial of substantive due process, and failure to follow federal regulations. Presently pending before the Court is Defendants' Motion to Dismiss or for Summary Judgment and Plaintiff's Motion for Summary Judgment on Count III.

### BACKGROUND

On January 1, 1999, Evers, a neurologist, was awarded contract 0600-99-55009 for medical consult services at the Social Security Administration ("SSA") Region Five Center for Disability. (Def.'s 56.1(a)(3) Statement ¶ 1). Through the Contract, Evers was a SSA contractor. (Id., ¶ 2).

The SSA is an independent agency in the Executive Branch of the Government of the United States of America. (Def.'s 56.1(a)(3) Statement ¶ 3). Jo Anne Barnhart is the Commissioner of Social Security. (Id., ¶ 5). The Commissioner is responsible for the exercise of all powers and duties of SSA and has authority and control over all SSA personnel and activities. (Id., ¶ 6).

Reggie Poskocimas is an SSA Contracting Officer and possesses an SSA Contracting Officer's Warrant. (Def.'s 56.1(a)(3) Statement ¶ 7). The Warrant states that Poskocimas has been delegated authority by the Commissioner to award, administer, and terminate contracts for SSA. (Id., ¶ 8). The Warrant establishes Poskocimas's authority and responsibility to take binding contractual actions for SSA. (I.d, ¶ 9). Nestor Floresca is a Contract Specialist in SSA's Region Five and works under the supervision of Poskocimas. (Id., ¶ 10). Floresca's duties are to assist Poskocimas in the award, administration, and termination of SSA contracts by corresponding and communicating with contractors and potential contractors on behalf of the Contracting Officer, Poskocimas. (Id., ¶ 11).

Jerry Kayser is the Director of the Center of Disability in Region Five and the Project Officer for medical consultant contracts, which included the Contract. (Def.'s 56.1(a)(3) Statement ¶ 12). Kayser's duties include the oversight and administration of the disability program within the six-state Great Lakes Region. (Id., ¶ 13). As Project Officer for the medical consultant contracts, Kayser provides technical direction for the tasks performed by the medical consultant contractors and monitors the acceptance of the contractors' work performance on behalf of the Contracting Officer, Poskocimas. (Id., ¶ 14). Kayser's duties as Project Officer include keeping the Contracting Officer, Poskocimas, informed of the adequacy of the medical consultant contractors' performance and progress. (Id., ¶ 15). Poskocimas delegated to Kayser the authority to communicate with, confer with, review and approve work of, and correspond directly with the medical consultant contractors and to monitor the medical consultant contractors' contract performance. (Id., ¶ 16).

Lillie Brown was a team leader in the Center for Disability, Region Five. (Def.'s 56.1(a)(3) Statement ¶ 18). Brown's duties and responsibilities included the administration and oversight of

the disability policy in the six-state Great Lakes Region. (Id., ¶ 19). Kayser delegated to Brown, and other team members, to monitor the quality of work and productivity of the medical consultant contractors, including Evers. (Id., ¶ 20). Brown and her team were responsible for providing disability-related program training to medical consultant contractors. (Id., ¶ 21).

Donna Mukogawa was the Assistant Regional Commissioner, Management Operations and Support. (Def.'s 56.1(a)(3) Statement ¶ 22). Mukogawa had authority for all of the Center for Disability's operations. (Id., ¶ 23). Mukogawa is the first-line supervisor for Kayser. (Id., ¶ 24). Mukogawa also has authority for the Center for Material Resources, which includes the Regional Contracting Officer, Poskocimas. (Id., ¶ 25). All disability program/policy and medical consultant contractor-related issues fall under the purview of Mukogawa. (Id., ¶ 26).

James Martin is the Regional Commissioner for SSA's Region Five. (Def.'s 56.1(a)(3) Statement ¶ 28). Martin is the senior SSA executive responsible for all federal and state employees who administer the SSA programs in the six-state Great Lakes Region. (Id., ¶ 29). Martin has oversight responsibility for all regional office activities and staff, including Mukogawa, Kayser, and Poskocimas. (Id., ¶ 30).

The Contract awarded to Evers had an initial contract period and four one-year options. (Def.'s 56.1(a)(3) Statement ¶ 32). Contract Option Year 4 ran from January 1, 2003 until December 31, 2003. (Id., ¶ 33). The SSA's exercise of Option Year 4 obligated the SSA to order a minimum of 100 hours of medical consultant services from Evers, or a minimum of 150 case reviews during the period of January 1, 2003 through December 1, 2003. (Id., ¶ 34). Absent termination for other reasons, the Contract expired by its own terms on December 31, 2003. (Id., ¶ 36).

The Contract incorporates, by reference, the contract terms and conditions found in 48 C.F.R. 52.212-4, including the following language:

> Termination for cause. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.
>
> Termination for the Government's convenience. The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. In the event of such termination, the Contractor shall immediately stop all work hereunder and shall immediately cause any and all of its suppliers and subcontractors to cease work. Subject to the terms of the contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. This paragraph does not give the Government any right to audit the Contractor's records. The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.
>
> Disputes. This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613). Failure of the parties to this contract to reach agreement on any request for equitable adjustment, claim, appeal, or action arising under or related to this contract shall be a dispute to be resolved in accordance with the clause at FAR 52.233.1, Disputes, which is incorporated herein by reference.

(Def.'s 56.1(a)(3) Statement ¶¶ 36-39). The Contract also provided for the removal of a contractor for disorderly conduct, use of offensive language, quarreling, intimidation by words or actions,

fighting, and participation in disruptive activities which interfere with the normal and efficient operations of the Government. (Id., ¶ 39).

Brown, as team leader in the Quality Assurance Branch of the SSA's Center for Disability, Region Five, was responsible for monitoring and reviewing Evers' contract performance. (Def.'s 56.1(a)(3) Statement ¶ 40). In the course of performing her quality assurance reviews, Brown reviewed Evers' medical assessment on a particular case, concluding that Evers had made a technical error in his medical evaluation in that he commented on a vocational issue. (Id., ¶ 41).

On August 1, 2003, between 9:00 a.m. and 10:00 a.m., Brown went to Evers' work area and advised Evers that his medical assessment of the case was in error because he had commented on a non-medical issue. (Def.'s 56.1(a)(3) Statement ¶ 42). At that time and place, Evers and Brown had a verbal confrontation concerning the case. (Id., ¶ 43). Evers became angry and told Brown in a loud voice that the occupational history in the case was a medical issue. (Id., ¶ 44). Evers also told Brown in a loud voice that she was a non-medical person and was incompetent to address medical issues. (Id., ¶ 45). Evers also told Brown in a loud voice that he would not listen to her medical opinions; that her interference with his work should be investigated by the Inspector General; that he did not want to see Brown; and that she should leave his work area. (Id., ¶¶ 46-48).

Shortly thereafter, Joseph Cools, a witness to the confrontation and another medical consultant contractor, sent Brown an e-mail describing his recollection of the incident. (Def.'s 56.1(a)(3) Statement ¶ 49). Brown reported the confrontation to Kayser by forwarding a copy of Cool's e-mail. (Id., ¶ 50).

Kayser asked Evers to report to Kayser's office within one-hour of receiving Brown's e-mail. (Def.'s 56.1(a)(3) Statement ¶ 52). Kayser requested that Evers send him an e-mail describing his

version of the confrontation and told Evers to leave the facility. (Id., ¶¶ 53-54). Kayser informed the SSA's building security service that Evers was not permitted access to the SSA's building until the SSA had made a final determination on Evers' contract status. (Id., ¶ 55). The same date as the incident, Federal Protective Service Police Officer, James Hampton, interviewed Brown and prepared an incident report. (Id., ¶ 56). That same day, Evers sent Brown an e-mail apologizing for his "angry acting-up." (Id., ¶ 57).

Floresca prepared a letter from the SSA to Evers stating, "due to the incident that happened today (August 1, 2003) between you and Ms. Lillie Brown, Team Leader, Center for Disability, please be advised that work under this contract will be stopped while this incident is under investigation." (Def.'s 56.1(a)(3) Statement ¶ 58). Floresca signed and sent the letter that same day at the direction of his supervisor. (Id., ¶ 59).

Evers' Contract contained a guaranteed minimum of 100 hours of work or 150 take-home cases for calendar year 2003, which equals $7,165.00 for hourly work or $6,720.00 for take-home cases. (Def.'s 56.1(a)(3) Statement ¶ 62). By August 4, 2003, the SSA had paid Evers $76,636.13, an amount far greater than the guaranteed minimum for the 2003 calendar year. (Id., ¶ 63).

On August 4, 2003, Evers sent Kayser a letter regarding the August 1, 2003 incident. (Def.'s 56.1(a)(3) Statement ¶ 64). On August 15, 2003, Poskocimas sent a letter to Evers stating that the letter served as notification that contract 0600-99-55009 was hereby terminated for cause due to the August 1, 2003 incident, pursuant to clause 52.212-4. (Id., ¶ 65). The letter advised Evers that:

> "This is the final decision of the Contracting Officer. You may appeal this decision to the agency board of contract appeals. If you decide to appeal, you must, within 90 days from the date you receive this decision, mail or otherwise furnish written notice to the agency board of contract appeals and provide a copy to the Contracting

6

> Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the agency board of contract appeals, you may, solely at your election, proceed under the board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the agency board of contract appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Dispute Act of 1978, 41 U.S.C. § 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

(Id., ¶ 66).

In early September 2003, by his attorney, Evers filed a complaint at the General Services Board of Contract Appeals ("GSBCA"). (Def.'s 56.1(a)(3) Statement ¶ 67). The complaint set forth five causes of action: denial of procedural due process, denial of substantive due process, failure to follow agency regulations, retaliatory discharge, and intentional interference with an existing contract and prospective advantage. (Plaint.'s 56.1(a)(3) Statement ¶ 29). On September 12, 2003, the GSBCA docketed Evers' appeal under the Contracts Dispute Act and directed the Contracting Officer, through Government counsel, to file an appeal file, and file an answer to Evers' complaint by October 14, 2003. (Def.'s 56.1(a)(3) Statement ¶ 69). Subsequently, the SSA filed its answer and its appeal with the GSBCA. (Id., ¶ 70).

On October 24, 2003, the SSA filed a Motion to Dismiss, arguing that the GSBCA lacked subject matter jurisdiction because the Contracting Officer's final decision was limited to the one issue that Evers' contract was terminated for cause as a result of the August 1, 2003 incident. In the motion, the SSA argued that Evers' monetary claims based on the Constitution and failure to follow regulations had not been submitted to an SSA Contracting Officer for final decision pursuant to the Contract Disputes Act; therefore, the GSBCA must dismiss these claims. (Def.'s 56.1(a)(3)

Statement ¶¶ 72, 74). The SSA's motion also challenged the lack of factual support for Ever's claim of debarment and argued that the SSA had taken no action which could be construed as either an actual or *de facto* debarment. (Id., ¶ 73). The SSA conceded that the GSBCA had jurisdiction over Evers' claim that the SSA lacked a sufficient contractual basis for the contract's termination but disputed the claim. (Id., ¶ 76).

On October 27, 2003, Evers moved to dismiss his entire appeal at GSBCA, without prejudice, for lack of jurisdiction. (Def.'s 56.1(a)(3) Statement ¶ 76). The SSA opposed Evers' motion, arguing that Evers had made a binding election of forum. (Id., ¶ 77). On November 4, 2003, the GSBCA concluded that it had jurisdiction to consider Evers' challenge to the termination of his contract; but it lacked jurisdiction over the other claims made in the complaint because none of them had been the subject of a contracting officer's decision and because its jurisdiction did not encompass claims of due process violations, torts, or debarments and suspensions. (Id., ¶ 78). The GSBCA's order afforded Evers the choice of continuing to litigate the propriety of termination before the GSBCA or voluntarily withdrawing the claim with prejudice, warning that such a withdrawal might affect Evers' ability to challenge the contract termination at a later date either before the GSBCA or some other forum. (Id., ¶ 79). The GSBCA's order gave Evers until November 18, 2003, to withdraw the claims, or it would assume that Evers wished to proceed before the GSBCA. (Id., ¶ 80).

On November 21, 2003, Evers informed the GSBCA that he wished to withdraw his appeal, without prejudice. (Def.'s 56.1(a)(3) Statement ¶ 81). On November 24, 2003, the GSBCA issued an order, finding that although dismissal without prejudice might have been possible within the 90-day jurisdictional window, dismissal without prejudice was no longer possible. (Id., ¶ 83). The

order stated that the GSBCA would dismiss the appeal with prejudice in two weeks unless Evers explained how a dismissal without prejudice was appropriate or chose to continue to litigate before the GSBCA. (Id., ¶ 84). On December 11, 2003, the GSBCA dismissed Evers' complaint challenging the termination of his contract that it had determined was within its jurisdiction, with prejudice. (Id., ¶ 85).

On November 17, 2003, the SSA's Chicago regional office issued a request for quotation seeking medical consultant services from doctors of medicine and psychology/psychiatry to perform case reviews of pending disability claims. (Def.'s 56.1(a)(3) Statement ¶ 86). That same day, the regional office issued a request seeking a regional medical coordinator for the medical consultant services program. (Id., ¶ 87). On December 3, 2003, the SSA's Chicago regional office issued a request seeking medical consultant services from doctors of medicine specializing in neurology and physical medicine and rehabilitation to perform case reviews of pending disability claims. (Id., ¶ 88). The Contracting Officer for each of the requests was Poskocimas, who had terminated Evers' contract earlier that year. (Id., ¶ 89).

Evers submitted quotes on all three requests. (Def.'s 56.1(a)(3) Statement ¶ 90). Forty-two additional medical professionals submitted quotes on the first request and one other medical professional submitted a quote on each of the second and third requests. (Id., ¶¶ 91-93).

Poskocimas established a technical evaluation team to evaluate the quotes using five criteria. (Def.'s 56.1(a)(3) Statement ¶¶ 94-95). Evers received the maximum number of points (eighty) under this evaluation criteria. (Id., ¶ 97) Medical professionals who achieved an evaluation score of at least 55 were also evaluated based on their past performance. (Id., ¶ 98). The past performance evaluations were conducted by evaluating five criteria, each with a maximum number of 4 points,

9

for a total of a possible 20 points. The total was then divided by the number of criteria, 5, for a maximum number of points of 4. Evers received a raw score of 9 and an overall average of 1.8. (Id., ¶¶99-100). Each medical professional was then given a total score, computed by multiplying the evaluation score by the past performance score, resulting in a maximum total score of 320 points. (Id., ¶ 101). Evers received a total score of 144. (Id., ¶ 102).

After the evaluation and ranking of the medical professionals, Poskocimas requested that the Director recommend doctors for the three requests. (Def.'s 56.1(a)(3) Statement ¶ 103). Poskocimas informed the Director that a written justification would be required in the event he recommended any medical professional whose total score was below 137.5 or whose evaluation score was below 55 or whose past performance score fell below 2.5. (Id., ¶ 104). The Director selected medical professionals whose scores exceeded the minimum scores established by the Contracting Officer. (Id., ¶ 105).

Poskocimas accepted quotes of only those medical professionals who were rated above the minimum evaluation scores and who were recommended by Kayser. (Def.'s 56.1(a)(3) Statement ¶ 106). Poskocimas declined to award any contracts to Evers based on Evers' prior termination for cause because Poskocimas could not affirmatively determine that Evers was a responsible contractor. (Id., ¶ 107). The acquisition regulations require the Contracting Officers to presume that a contractor that is or recently has been seriously deficient in contract performance is not a responsible contractor. (Id., ¶ 108).

On January 8, 2004, Poskocimas advised Evers that his quote was not accepted because of his past contract performance, specifically, the August 1, 2003 incident which resulted in the termination of Evers' contract. (Def.'s 56.1(a)(3) Statement ¶ 108). Evers remained free to submit

quotes, bids or proposals in response to any federal government solicitation. Evers is not, nor has he ever been, suspended or debarred by the SSA. (Id., ¶ 109). The SSA has never placed Evers' name on the Excluded Parties List System. (Id., ¶ 110).

On January 12, 2004, Evers filed three bid protests at the General Accounting Office. (Def.'s 56.1(a)(3) Statement ¶ 111). The bid protests allege that during the medical consultant contractor selection process, Evers "did not receive impartial, fair and equitable treatment," and SSA did not award the contract "in the spirit of free and open and good faith competition." (Id., ¶ 112). That same day, Evers sent a letter to the Commissioner of the SSA informing the Commissioner that the Center for Disability staff had an unhealthy relationship with the medical consultant contractors. (Id., ¶ 113).

On February 9, 2004, the SSA filed the requisite agency report pursuant to GAO rules, asserting that the SSA is required, by regulation, to presume that Evers was not a responsible contractor by reason of the termination for cause of his prior contract. (Def.'s 56.1(a)(3) Statement ¶ 114). On March 1, 2004, in response to the agency's report, Evers alleged that he was a small business and that the SSA could not make a non-responsibility determination without referring his quote to the Small Business Administration. (Id., ¶ 115). On March 8, 2004, the SSA agreed with Evers' position and agreed to determine whether the only problem with Evers' quote was non-responsibility; and, if so, it would refer the quote to the SBA. (Id., ¶¶ 116-117). Based on the SSA's representations, the GAO dismissed Evers' protest. (Id., ¶ 119). On March 24, 2004, Evers filed the instant Complaint. (Id., ¶ 120).

## ANALYSIS

Count I of Evers' Complaint alleges that Martin, Mukogawa, Kayser, Brown, Floresca, and Poskocimas violated Evers' Constitutional right to procedural due process because: (1) the suspension order of August 1, 2003 and the termination of his contract constituted a deprivation of his liberty and property without due process of law; (2) the suspension and termination deprived him of the interest in the remaining five months of the contract; (3) the suspension and termination deprived him of the reasonable expectancy that his contract would be renewed; (4) the SSA pinned a "badge of infamy" on him, putting his name, reputation, honor, and integrity at stake without providing him an opportunity to review the evidence against him or make a meaningful response; (5) his termination deprives him not only of present employment but also future employment; (6) he was entitled to a pre-termination hearing; (7) his termination was based upon pretext, and he was actually terminated because he was a whistle blower; and (8) he was entitled to the safeguards set forth in 5 C.F.R. Part 731.

Count II of Evers' Complaint alleges that Martin, Mukogawa, Kayser, Brown, Floresca, and Poskocimas violated Evers' Constitutional right to substantive due process because the termination of the contract was not an appropriate response to the August 1, 2003 incident. Count III alleges that the SSA failed to follow federal regulations in the termination of his contract and in the *de facto* suspension and debarment of him from future contracts with the Government.

### *Defendants' Motion to Dismiss*

In reviewing a motion to dismiss for failure to state a claim, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). A

plaintiff is not required to plead the facts or the elements of a claim, with the exception found in Federal Rules of Civil Procedure 9. *See Swierkiewicz v. Sorema*, 534 U.S. 506, 511 (2002) (*Swierkiewicz*); *Walker v. Thompson*, 288 F.3d 761, 764 (7th Cir. 2002). Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In considering a motion to dismiss for lack of jurisdiction, the court accepts the complaint's well-pleaded allegations as true and draws all reasonable inferences from those allegations in the plaintiff's favor. However, the court may also consider evidence outside the complaint when jurisdiction is disputed. *See United Transportation Union v. Gateway Western Railway Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

The Defendants argue that this Court lacks jurisdiction to hear Evers' claims relating to the termination of his contract pursuant to the Contract Disputes Act ("CDA"), 41 U.S.C. ¶ 601, *et seq.* The CDA applies to any express or implied contract entered into by an executive agency for the procurement of property or services. 41 U.S.C. ¶ 602. The CDA requires that "[a]ll claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to a contracting officer for a decision." 41 U.S.C. ¶ 605(b). The contracting officer's decision on a claim is final and conclusive and not subject to review by any forum, tribunal, or Government agency, unless an appeal is timely commenced as authorized by the CDA. 41 U.S.C. ¶ 605(b).

A contracting officer's decision may be appealed to an agency board of contract appeals within ninety days from the receipt of the contracting officer's decision. 41 U.S.C. ¶ 606. The board of contract appeals is authorized to grant any relief that would be available to a litigant asserting a contract claim in the United States Court of Federal Claims. 41 U.S.C. 607(d). The decision of the

board of contract appeals is final except that a contractor may appeal the board's decision to the United States Court of Appeals for the Federal Circuit. 41 U.S.C. ¶ 607(g)(1). In lieu of appealing the contracting officer's decision to an agency board of contract appeals, a contractor may bring a claim in the United States Claims Court. 41 U.S.C. ¶ 609(a)(1). Both the Court of Appeals for the Federal Circuit and the Court of Federal Appeals are vested with full authority to issue relief. 28 U.S.C. § 1491(a)(1)-(2); 41 U.S.C. § 607(d).

The "classification of a particular action as one which is or is not 'at its essence' a contract action depends both on the source of the rights upon which the plaintiff bases its claim, and upon the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) (*Megapulse*). If a claim appears as contractual after a consideration of the totality of the source of the rights and the relief, the CDA bars a district court from exercising jurisdiction over the claim. *See B & B Trucking, Inc. v. United States Postal Serv.*, 363 F.3d 404, 413 (6th Cir. 2004) (*B & B*). A plaintiff may not avoid the jurisdictional bar of the CDA merely by alleging violations of statutory or regulatory provisions rather than a breach of contract. *See Ingersoll-Rand Co. v. United States*, 780 F.2d 74, 77 (D.C. Cir. 1985) (*Ingersol-Rand*).

Evers' allegations relating to the termination of his contract and the results thereof are couched in allegations of violations of Evers' procedural and substantive due process rights and not as a breach of contract claim. However, the source of the rights upon which Evers' bases his claims is his contract with the SSA and the alleged wrongful termination of that contract. The gist of Evers' claims is the Government's alleged wrongful termination of its contract with him and the results thereof. "It is difficult to imagine a situation where a party whose contract with a government agency has allegedly been breached, could not assert that the breach constituted arbitrary and

14

capricious agency action and deprivation of property without due process of law." *J.C. Products, Inc. v. United States*, 608 F. Supp. 92, 94 (W.D. Mich. 1984) (plaintiff's claims based on termination of government contract were contractual despite plaintiff's not alleging breach of contract but, instead, alleging violations of due process); *Ingersoll-Rand*, 780 F.2d at 78 (CDA applied to claim that could be phrased as forbiding termination under certain conditions or could also arguably violate certain regulations). *Cf. Megapulse*, 672 F.2d at 969 (CDA did not apply to plaintiff's claim grounded in the Trade Secrets Act that would have existed in the absence of a contract); *B & B*, 363 F.3d at 416 (plaintiffs' asserted right to protect their property from being entered and used was not a contractual right, and Plaintiffs were not a party to the contract that the Government asserted mandated that the suit be brought pursuant to the CDA).

Furthermore, Evers seeks monetary damages in Counts I and II, further demonstrating that the action is contractual. Count III seeks a reversal of Evers' suspension and the termination of his contract, in other words, specific performance on the contract. *See Megapulse*, 672 F.2d at 969 (claim that did not seek monetary damages and/or specific performance of the contract was not contractual). Accordingly, this Court lacks jurisdiction over Evers' claims related to the termination of his contract.

Evers also brings his constitutional violation claims against the individual Defendants. In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) (*Bivens*), the Court authorized certain causes of action against individual federal officials for constitutional violations. However, where there is an explicit Congressional declaration that injured parties be remitted to another remedy deemed equally effective by Congress, or where there are "special factors" counseling hesitation in the absence of affirmative action by Congress, this judicial power should

15

not be exercised. *Bivens*, 403 U.S. at 396-97.

As to Plaintiff's *Bivens* claims against the individual Defendants, the comprehensive system of remedies for resolving government contract suits via the CDA precludes a private cause of action for an alleged constitutional violation. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 565 (9th Cir. 1994); *Springer v. Seaman*, 821 F.2d 871, 882 (1st Cir. 1987); *United States v. McDonnell Douglas Corp.*, 751 F.2d 220, 223 (8th Cir. 1984); *Teel v. Di Leonardi*, 1999 WL 133997 (N.D. Ill. March 5, 1999). Accordingly, the *Bivens* claims against the Defendants in their individual capacities are dismissed.

Evers claims that the Defendants failed to follow governmental regulations found within 5 C.F.R. Part 731. However, 5 C.F.R. Part 731 applies to federal employees, not federal contractors. *See* 5 C.F.R. Part 1. Accordingly, Evers' claims that the Defendants failed to follow required regulations found within 5 C.F.R. Part 731 fail.

*Defendants' and Plaintiff's Motions for Summary Judgment*

Defendants and Plaintiff seek summary judgment on Count III of Evers' Complaint.

In Count III, Evers claims that Defendants failed to follow 5 C.F.R. Part 731 and that the August 1, 2003 letter stopping his work and the August 15, 2003 letter terminating his Contract for cause based on the August 1, 2003 incident constituted a *dejure* suspension and *de facto* debarment of which the SSA did not comply with regulations that set forth the methods in which a suspension and debarment are to take place. Evers contends that evidence of the suspension and debarment includes the denial of his subsequent three bids. As set forth above, Evers' 5 C.F.R. Part 731 claim is dismissed with prejudice; and Defendants' Motion for Summary Judgment as to this claim is denied as moot.

As to Evers other claims of *dejure* suspension and *de facto* debarment of Count III, under the applicable regulations, a suspension "disqualif[ies] a contractor temporarily from Government contracting and Government-approved subcontracting . . . ."; and a debarment "exclude[s] a contractor from Government contracting and Government-approved subcontracting for a reasonable, specified period. . . ." 48 C.F.R. 2.101. A genuine issue of material fact exists as to whether the SSA's actions constituted a *dejure* suspension and/or *de facto* debarment. *See Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1259 (2nd Cir. 1975) (although the Government did not label its actions a debarment, it cannot bypass the procedural safeguards by omitting the formal label of the sanction applied). Accordingly, summary judgment on these claims for either party is denied.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss is granted. Counts I and II are dismissed. Evers' claim of failure to follow 5 C.F.R. Part 731 in Count III is dismissed. Defendants' and Plaintiff's Motions for Summary Judgment are denied.

Dated: June 22, 2005

JOHN W. DARRAH
United States District Judge