UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HANS EVERS, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 2189 |
| v. ) | |
| ) | Judge John W. Darrah |
| MICHAEL J. ASTRUE[1], Commissioner of the ) | |
| United States Social Security Administration; ) | |
| JAMES MARTIN; DONNA MUKOGAWA; ) | |
| JERRY KAYSER; LILLIE BROWN; ) | |
| NESTOR FLORESCA; REGGIE POSKOCIMAS; ) | |
| and THE UNITED STATES SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Plaintiff, Hans Evers, M.D., filed suit against Defendants, alleging: (1) denial of procedural due process (Count I), (2) denial of substantive due process (Count II), and (3) failure to follow federal regulations (Count III). Evers' claims pertain to the suspension and ultimate termination of his medical consult service contract with the Social Security Administration ("SSA").

Count I alleged that certain Defendants violated Evers' constitutional right to procedural due process because: (1) the suspension and the termination of his contract constituted a deprivation of his liberty and property without due process of law; (2) the suspension and the termination deprived him of the interest in the remaining five months of the contract; (3) the suspension and the termination deprived him of the reasonable expectancy that his contract would be renewed; (4) the SSA pinned a "badge of infamy" on him, putting his name, reputation, honor, and integrity at stake

---
[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Accordingly, he is substituted as the Defendant in this civil action.

without providing him an opportunity to review the evidence against him or make a meaningful response; (5) his termination deprives him not only of present employment but also future employment; (6) he was entitled to a pre-termination hearing; (7) his termination was based upon pretext, and he was actually terminated because he was a whistle blower; and (8) he was entitled to the safeguards set forth in 5 C.F.R. Part 731.

Count II alleged that certain Defendants violated Evers' constitutional right to substantive due process because the termination of the contract was not an appropriate response to an incident involving Evers and a SSA employee.

In a previous order, the Court granted Defendants' Motion to Dismiss as to Counts I and II, finding that the Court lacked jurisdiction over Evers' claims relating to the termination of his contract pursuant to the Contract Disputes Act. The Court also dismissed Evers' *Bivens* claims against the individual Defendants, finding that the comprehensive system of remedies for resolving government contract suits via the CDA precludes a private cause of action for an alleged constitutional violation. *See Janicki Logging Co. v. Mateer*, 42 F.3d 561, 565 (9th Cir. 1994). Lastly, as to Counts I and II, the Court dismissed Evers' claims that the Defendants failed to follow governmental regulations found within 5 C.F.R. Part 731 because 5 C.F.R. Part 731 applied to federal employees, not federal contractors.

The remaining count, Count III, alleged that the SSA failed to follow federal regulations in the termination of his contract and in the *de jure* suspension and *de facto* debarment of him from future contracts with the government.

A bench trial was held in March 2007. During the trial, the parties presented numerous exhibits and the testimony of several witnesses. Following the conclusion of the testimony, the Court entered a schedule for the parties' written closing argument briefs, including arguments on the issue of whether Evers' remaining claims were moot, and proposed findings of fact and conclusions of law.

Pursuant to Federal Rule of Civil Procedure 52, the Court enters the following written Findings of Fact and Conclusions of Law, which are based upon consideration of all the admissible evidence and this Court's own assessment of the credibility of the trial witnesses. To the extent, if any, that Findings of Fact, as stated, may be considered Conclusions of Law, they shall be deemed Conclusions of Law. Similarly, to the extent, if any, that Conclusions of Law, as stated, may be considered Findings of Fact, they shall be deemed Findings of Fact.

## FINDINGS OF FACT

Evers, a neurologist, alleged that in January 1999, he was awarded a contract for medical consultant services at the SSA Region Five Center for Disability. Through the contract, Evers was a SSA contractor. The contract awarded to Evers had an initial contract period and four one-year options. Contract Option Year 4 ran from January 1, 2003 until December 31, 2003. Absent termination for other reasons, the contract expired by its own terms on December 31, 2003. On August 1, 2003, Lillie Brown, a team leader in the Center for Disability, went to Evers' work area and advised Evers that his medical assessment of the case was in error because he had commented on a non-medical issue. A verbal confrontation concerning the case then occurred where Evers became angry and told Brown that the occupational history in the case was a medical issue, that she was a non-medical person who was incompetent to address medical issues, that he would not listen

to her medical opinions, that her interference with his work should be investigated by the Inspector General, that he did not want to see Brown, and that she should leave his work area. That same day, Nestor Floresca, a Contract Specialist, issued a letter to Evers suspending Evers by stopping work on his contract pending an investigation. Floresca's letter did not cite any regulations or authority for stopping Evers from working through his contract. Also that same day, Jerry Kayser, the Director of the Center for Disability and the Project Officer for medical consultant contracts, requested that Evers send him an e-mail describing his version of the confrontation and told Evers to leave the facility because Brown feared for her personal safety. Evers was not permitted access to the SSA's building until the SSA had made a final determination on Evers' contract status.

On August 4, 2003, Evers sent Kayser a letter regarding the August 1, 2003 incident. On August 15, 2003, Poskocimas sent a letter to Evers, stating that the letter served as notification that Evers' contract was hereby terminated for cause due to the August 1, 2003 incident. The August 15 letter was the first time that Evers was advised that any regulations applied to the SSA's actions and that he was being terminated pursuant to 5 C.F.R. Part 731, *et seq*.

From January 2004 until January 2007, Evers' medical license was placed on probationary status because he was unable to produce documentation that he had completed continued medical education. Evers' name did not appear on the List of Parties Excluded from Federal Procurement and Nonprocurement Programs or any other report made by the SSA to the Office of Personnel Management.

## CONCLUSIONS OF LAW

Mootness is a threshold jurisdictional question that must be addressed by a court even if the issue is not raised by one of the parties. *See Worldwide St. Preachers' Fellowship v. Peterson*, 388 F.3d 555, 558 (7th Cir. 2004) (*Worldwide*). Addressing the mootness issue insures that the Court remains faithful to the case or controversy limitation set forth in Article III of the United States Constitution by refraining from deciding legal questions that do not affect existing controversies between the parties before the court. *See Protestant Mem'l Med. Ctr., Inc. v. Maram*, 471 F.3d 724, 729 (7th Cir. 2006) (*Maram*).

The issue of whether the litigation is moot – whether a live case or controversy still exists – bears a close resemblance to the issue of standing. Both mootness and standing requirements are founded on the case and controversy requirement in Article II of the United States Constitution and raise the question as to whether the plaintiff has a personal stake in the outcome of the litigation. The difference between standing and mootness primarily lies in when the issue arises – standing concerns the requisite personal stake at the commencement of the litigation, and mootness concerns whether the required personal stake continues through the end of the litigation. *See South East Lake View Neighbors v. Department of Housing and Urban Dev.*, 685 F.2d 1027, 1039 n. 9; *Murphy v. Hunt*, 455 U.S. 478, 481 (1982) (a case becomes moot when the issues presented are no longer live or the party lacks a legally cognizable interest in the outcome of the litigation). Here, the Defendants argue that the instant case has become moot because Evers no longer has a legally cognizable interest in the outcome of the litigation because there is no available remedy to redress Evers' alleged injury.

A claim may become moot if the plaintiff is without a remedy, in other words, if the court "can no longer 'affect the rights of litigants in the case.'" *Worldwide*, 388 F.3d at 558, *quoting North Carolina v. Rice*, 404 U.S. 244, 246 (1971). However, the mootness doctrine does not apply to claims that are "capable of repetition, yet evading review." *Maram*, 471 F.3d at 730. Two conditions must be met for this exception to apply: (1) the challenged action is too short in duration to be fully litigated prior to its expiration or cessation and (2) there is a reasonable expectation that the present plaintiff will be subjected to the same action again. *See Maram*, 471 F.3d at 730. However, "the capable-of-repetition doctrine applies only in exceptional situations." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983). Furthermore, there must be a "reasonable expectation" or a "demonstrable probability" that the same controversy will recur involving the same parties; a "mere physical or theoretical possibility" is insufficient. *Maram*, 471 F.3d at 731 (internal citations and quotations omitted).

## ANALYSIS

Count III of Evers' Complaint seeks eleven specific requests for relief. First, Evers seeks to have the Court review the administrative record of the case. This request is not a request for relief as it cannot redress any of Evers' alleged injuries. Next, Evers asks that the Court find that Evers suffered an unconstitutional denial of procedural and substantive due process. This request is not a request for relief to redress Evers' alleged injury; instead, it is a request for finding that Evers was injured.

Third, Evers requests that the Court reverse the SSA's August 3, 2003 suspension and its action terminating Evers' contract and finding him unfit to contract effective August 15, 2003. In essence, Evers seeks an equitable remedy for a contract that, by its own terms, has been shown to

have expired. Furthermore, the Court has previously dismissed Evers' claims relating to the stop-work order and the contract termination for want of jurisdiction over the contract issues. Thus, the third requested relief is not attainable.

Similarly, Evers seeks an order of the Court to expunge Evers' file of all references of the August 1, 2003 incident and the August 15, 2003 termination and subsequent "secret" determination that Evers was a non-responsible contractor. However, as addressed above, the contract issues relating to the August 1 and August 15, 2003 actions were dismissed for want of jurisdiction.

Evers' fifth and sixth requests for relief seek an order removing Evers' name from the List of Parties Excluded from Federal Procurement and Nonprocurement Programs and from any report made by the SSA to the Office of Personnel Management. However, as found above, Evers' name was never on the List or any report by the SSA to the Office of Personnel Management.

Evers' seventh request for relief seeks an order that the SSA give "an honest and fair consideration" to the renewal of Evers' contract with the SSA and as to other bids that Evers has submitted but have been denied. Evers' 2003 contract and the contracts for 2004 through 2005 have expired and cannot be "renewed." Furthermore, the 2005 and 2006 contract bids could not have been awarded to Evers because, as found above, it is uncontroverted that at the time that contracts were awarded, Evers' medical license was on probationary status because Evers was not able to produce documentation that he had completed continuing education requirements, a reason unrelated to the events of August 2003.

In his eighth request for relief, Evers seeks an order requiring the SSA to give him "the good references he deserves," without any reference to the August 2003 events, "in the event" he obtains other employment. The sought-after relief relates to the dismissed Counts I and II. Furthermore, the

7

requested relief is speculative as evidenced by the terms of the relief sought, "in the event" and the lack of any proof that the SSA provides references for any contract employees, let alone Evers himself.

Evers' ninth request for relief seeks a finding by the Court that the SSA failed to follow the applicable regulations and deliberately sought to circumvent such regulations and procedures. This request seeks only a finding by the Court, not relief that would redress any alleged injury.

Evers' tenth request for relief is to recover his costs, expenses, and attorney's fees. However, the recovery of such costs is premised on prevailing on the merits of his constitutional claims and cannot provide an independent basis for the required Article II case or controversy. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 480 (1990).

Evers' eleventh request for relief seeks the Court to "order such other and further relief as [the] Court may deem just and appropriate." However, no such other remedy appears to exist. As Evers concedes, he does not seek monetary damages, reinstatement, specific performance, or any other relief calling upon the SSA to perform its contract with him. Instead, Evers argues that he seeks equitable relief in vindication of his protected constitutional rights to procedural and substantive due process. However, Evers fails to specify any relief that redresses his alleged injuries or to provide any evidence supporting any such claim.

Even if the Court were to find that he was *de jure* suspended and/or *de facto* debarred as alleged, there would be no change in Evers' present status – the expired contracts and any contracts that were not awarded to Evers due to reasons not related to the dispute between the parties' litigation cannot be reversed. Evers' right to apply for future contracts remains. Furthermore, if

Evers does apply for contracts in the future and is not awarded such contracts, Evers retains the right to challenge those actions in the Court of Federal Claims or the Government Accountability Office.

Lastly, Evers has failed to demonstrate that the capable-of-repetition doctrine is applicable. Evers concedes that any future procurement issues that arise may be timely reviewed in the Court of Federal Claims and/or the Government Accountability Office; and Evers has failed to demonstrate that there is a reasonable expectation that he will be subjected to the same action again. *See Maram*, 471 F.3d at 730-31.

Based on the above, the Court lacks jurisdiction over Evers' remaining claims because they are moot. Accordingly, the case is dismissed for want of jurisdiction.

Dated: September 20, 2007

JOHN W. DARRAH
United States District Court Judge

9